# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:04cr115

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| MERLE LEROY ADAMS, JR. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon defendant's Motion to Suppress Physical Evidence. Having considered defendant's motion and conducted an evidentiary hearing, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

**I. Background**

Defendant stands charged by way of a one-count Bill of Indictment with being a felon in possession of a firearm, a violation of 18, United States Code, Section 922(g)(1). The Grand Jury alleges that defendant is a convicted felon who possessed a .25 caliber Excam pistol on or about January 24, 2004. At the hearing, the United States called Officer Doug Underwood, of the Asheville Police Department, who testified to the following circumstances concerning the arrest of defendant.

On the night of January 24, 2004, Officer Underwood was at the Exxon station located at 51 Merrimon Avenue in uniform in a marked patrol car. He was approached by an adult male who told him that he had just seen a black male wearing a tan jacket display a pistol on

Lexington Avenue near the I-240 interchange. Officer Underwood further testified that the man who approached him told him that the man with the pistol was with a white female who was wearing a pink shirt. While Officer Underwood did not know the man who was providing information, he testified that the person neither had any odor of alcohol about his person nor did he have any signs of being under the influence of controlled substances. Officer Underwood further testified that while the informant was excited, he showed no signs that would indicate that he was not serious. Officer Underwood did not obtain the citizen's name.

Officer Underwood stated that the area where the suspect was observed with the gun was approximately 300 feet from the Exxon station where he was then located. The court takes judicial notice that the Exxon on Merrimon Avenue is located at the Northeast corner of the I-240 interchange, and that the location where the alleged unlawful activity was occurring was located near the Southwest corner of the same interchange.

After the informant provided the information, Officer Underwood asked him whether what he had reported had just occurred, and the informant responded "yes." Based on his observations of the informant, Officer Underwood testified that he believed the information he had received from the informant was reliable.

After receiving such information, Officer Underwood proceeded ion his patrol car to the location the informant had described. In less than a minute, Officer Underwood arrived at Lexington Avenue and observed persons dressed as the informant had described walking

on the East side of the street headed South. Officer Underwood parked his patrol car, exited the vehicle, and walked up to the suspect. Officer Underwood then asked the suspect, who turned out to be the defendant herein, whether he had any weapons. Defendant failed to respond to this question and Officer Underwood directed him to put his hands behind his head and interlace his finger. At that point, Officer Underwood conducted a pat down of the exterior of defendant's clothing, discovering a pistol in defendant's pants pocket. Officer Underwood removed the weapon from the defendant's pocket, and placed defendant under arrest, charging him with the state offense of unlawful carrying of a concealed weapon. Officer Underwood testified that from the time the informant encountered him until the time of arrest was not more than two minutes.

## II.     Standard Applicable to Motions to Suppress

Motions to suppress are mixed questions of law and fact that are disposed of by the court without the assistance of the jury. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005); Fed.R.Crim.P. 12(b)(3)(C), 12(d); Fed.R.Evid. 104(a). When a defendant moves to suppress evidence seized based on an investigatory stop, the United States Supreme Court has held that the

> Fourth Amendment protects citizens from 'unreasonable searches and seizures' by the government, and its protections extend to brief investigatory stops ... that fall short of traditional arrest."

United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). In those situations, the court looks to whether the actions of law enforcement are

supported by a reasonable articulable suspicion that criminal activity "'may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, supra, at 30). To determine whether an investigatory stop meets the requirements of the Fourth Amendment, a court must "look at the 'totality of the circumstances'" to see whether the detaining officer had a " 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra, at 273. The court's inquiry is objective rather than subjective, in that the Fourth Amendment inquiry "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," not what an officer thought or anticipated at the time. Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (citation and quotations omitted). In this case, the court heard the testimony of Officer Underwood of the Asheville Police Department, and finds such unimpeached testimony to be credible and consistent with the court's own knowledge of the location involved, which is with a few blocks of the federal courthouse. The defendant did not testify.

### III. Discussion

#### A. Terry Analysis of the Stop and Search

The teachings of the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968), and its progeny govern this court's inquiry. Under Terry, if an officer has a reasonable articulable suspicion that criminal activity is afoot - - that is, that a person has just committed or is about to commit a crime - - he may seize such person and, if he reasonably fears the person is armed and dangerous, may conduct a frisk for weapons. Id  A reasonable suspicion will  also support a

stop for the limited purpose of questioning.  Florida v. Royer, 460 U.S. 491, 498 (1983).

Whenever an investigative stop is based on less than probable cause, it "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Id., at 500. An "articulable and reasonable suspicion" requires some minimal level of objective justification for the stop, which must be more than an unparticularized "hunch," but less than the level of suspicion required for probable cause.  United States v. Sokolow, 490 U.S. 1 (1989); United States v. Hensley, 469 U.S. 221 (1985); United States v. Hines, 943 F.2d 348 (4th Cir.), cert. denied, 60 U.S.L.W. 3405 (U.S. 1991).  A "totality of the circumstances" test is used to determine the existence of a reasonable suspicion of criminal conduct.  United States v. Sokolow, supra.  Factors to be considered in measuring the reasonableness of a stop include:

    a.    the area's disposition toward criminal activity;

    b.    the time of the stop; and

    c.    any suspicious conduct assessed in light of the officer's experience.

Id.

Reviewing Officer Underwood's testimony in light of such factors, it appears that he received the tip from a person the officer found to be reliable.  While the officer did not ask for identification, the officer found such informant's demeanor to be consistent with providing accurate information.  Further, the officer acted on such information promptly and such information was corroborated prior to the Terry stop in that Officer Underwood encountered persons dressed as described by the informant in the exact place the informant said he observed

such persons.

The requirement of Terry is that the officer have a reasonable articulable suspicion that criminal activity is afoot. In this case, the officer received information that a man was displaying or showing a firearm on a city street. At that time, the officer, of course, had no knowledge that the suspect was a convicted felon or that he had concealed the weapon on his person. Unlike the District of Columbia where the possession of handguns is unlawful, a person may possess a firearm in North Carolina and under certain circumstances may carry it on or about his person. See N.C.Gen.Stat. 14-269. Thus, merely being told that a person possessed a firearm is not information that criminal activity is afoot. Here, the officer testified that the informant told him that not was the person in possession of a firearm, he was "showing" the weapon on a city street. That information, coupled with the informant's excited demeanor, would have provided the officer with a reasonable suspicion that the suspect was "going about armed with a dangerous weapon to the terror of the people," a North Carolina common law misdemeanor. State v. Dawson, 272 N.C. 535 (1967).

The reasonable articulable suspicion is not, however, viewed from the time when the officer received the tip, but from the point in time when the officer effectuated the Terry stop. As Officer Underwood's testimony made clear, the tip he received caused him to investigate. The investigation lead the officer to finding the persons described in the place where the informant told the officer they would be, thus corroborating the information received. At the point the officer saw the defendant, he did not see the handgun which hand been described. At

that point, and having found the information up to that point to be accurate and reliable, it was reasonable for the officer to conclude that the suspect had concealed the weapon, which is a North Carolina statutory misdemeanor. See N.C.Gen.Stat. § 14-269. At that point, having reason to believe defendant was armed with a concealed weapon, Officer Underwood would have been well within the bounds of Terry had he stopped and patted down defendant for weapons.

Rather than stopping and patting down defendant at that point, Officer Underwood furthered his investigation and bolstered his reasonable suspicion by first asking defendant whether he had any weapons on his person. Officer Underwood testified that defendant failed to respond. Based on such failure to answer, Officer Underwood then had ample reason, based on the totality of the information he had received, to believe that defendant was not only armed, but had concealed the weapon on his person, which fully justified his command that defendant put his hands behind his head and submit to a pat down.

> The reasonableness of the stop is somewhat further substantiated by the potential harm to many in the crowded bar and Mr. Suggs' failure to respond when asked to exit the bar and whether he had a gun. *See United States v. Bold*, 19 F.3d 99 (2d Cir.1994) ("the totality-of-the circumstances test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government's need for prompt investigation").

United States v. Suggs, 2000 WL 1658600, at 4 (D.Conn. Apr. 20, 2000).[1]

Conducting the traditional Terry analysis, and having considered all of the applicable

---

[1] Due to the limits of CM/ECF, a copy of such unpublished opinion is incorporated by reference to the Westlaw citation.

7

factors,[2] Officer Underwood had a reasonable articulable suspicion that criminal activity was afoot at the time he stopped and patted down defendant based on a totality of the circumstance at the time of the encounter.

### B.   J.L. and Brown Analysis

While all challenges to evidence seized as a result of a stop and frisk are subject to Terry analysis, the thrust of defendant's argument is that a tip from an anonymous source, who has not been previously determined to be reliable, cannot provide a sufficient basis for a Terry stop and weapons pat down.  Defendant cites Florida v. J.L., 529 U.S. 266 (2000), and the recent decision of the Court of Appeals for the Fourth Circuit in United States v. Brown, 401 F.3d 588 (4th Cir. 2005).  In both J.L. and Brown, the police received anonymous phone tips concerning alleged criminal activity, and in both cases the respective courts held that such anonymous phone tips, without more, did not provide sufficient "indicia of reliability" that would allow officers to evaluate the veracity of the tip and in turn form a reasonable articulable suspicion. See Brown, at 596.

The factual setting shared by J.L and Brown is not present in this particular case.  Instead, the facts are more akin to those in United States v. Christmas, 222 F.3d 141 (4th Cir. 2000).  The tipster in Christmas approached officers in person, failed to give her name, but told them where she lived.  Although intoxicated, she advised the officers of nearby ongoing criminal activity.  In that case, the Court of Appeals for the Fourth Circuit held, as follows:

---

[2]   Officer Underwood did not testify as to whether the location where defendant was found was an area known for criminal activity.

> Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements. As the Supreme Court observed, citizens who personally report crimes to the police thereby make themselves accountable for lodging false complaints.

Id., at 144. Further, the appellate court considered the close proximity of the informant to the criminal conduct when she approached uniformed police officers as bolstering her reliability. "The fact that she provided the report to uniformed police officers in public only increased the probability that someone associated with the illegal activity would witness her aid to the police." Id.

In this case, the uniformed officer was approached by an unidentified citizen who was apparently sober, appeared to the officer to be excited about what he had just witnessed, was in close temporal and geographic proximity to the events and the persons involved in alleged unlawful activity when he made the report, and placed himself at some risk in that he approached uniformed officers in a very public place to report such conduct.

> Absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration.

United States v. DeQuasie, 373 F.3d 509, 523 n.21 (4th Cir. 2004). While no additional corroboration was needed, much of the information received from the informant was in fact corroborated prior to the Terry stop: the suspect was found on the street where the informant said he would be found; he was dressed in the manner the informant said he would be dressed; and he was found with another individual dressed in the manner described by the informant.

While defendant points to the failure of the officer to get a name as diminishing the

reliability of the information received, it appears from the case law that it is the first-hand opportunity the officer has in a face-to-face encounter to judge the informant's credibility which is paramount in determining whether the information is reliable. United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004). The court simply can find no requirement that an officer find out the name of the informant before acting on the information the officer received. To find such a requirement would unnecessarily interject delay not required by the fourth amendment, all at the expense of public safety.

The undersigned will, therefore, recommend that defendant's Motion to Suppress evidence seized as a result of the stop and frisk on the night of January 24, 2004, be denied.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Suppress be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th

Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

**Signed: July 3, 2005**

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge